## Trees et al. *v.* Glenn, Appellant.

Argued October 17, 1935. Before FRAZER, C. J., KEP-HART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Lee C. McCandless,* of *Marshall & McCandless,* with him *James F. Coyle* and *Zeno F. Henninger,* for appellant.

*C. L. Wallace,* of *Weller, Wicks & Wallace,* for appellees.

OPINION. BY MR. JUSTICE SCHAFFER, November 25, 1935:

The broad question for decision on this appeal by defendant is whether a court of common pleas in one judicial district of the State may enjoin a litigant from proceeding by bill in equity in another judicial district of the State, on the ground that the claim asserted in the other district has been adjudicated and finally determined against the plaintiff by the court issuing the injunction, and is therefore res judicata as to the cause of action, and, on the further ground that the second suit is vexatious.

This is part of protracted litigation carried on by appellant and his brother, C. E. Glenn, against the appellees, J. C. Trees and M. L. Benedum. The transaction out of which it grew occurred in 1909. It involved the sale of certain oil and gas properties in Louisiana and Texas, which it was alleged were sold by Trees and Benedum for a much larger sum than they represented to appellant and his brother had been received. For the alleged difference in price C. E. Glenn called Trees and Benedum to account in a proceeding in equity in the Common Pleas of Allegheny County on December 28, 1916. The final decree dismissing the bill was entered by that court on March 27, 1922, and we affirmed January 3, 1923 (Glenn v. Trees, 276 Pa. 165).

In the instant case the chancellor found that the issues sought to be raised in a bill in equity filed by H. S. Glenn in Butler County were embodied and included in the original proceeding in Allegheny County and were there decided adversely to C. E. Glenn. The bill in the

original case was a class one brought by C. E. Glenn as a stockholder of the J. C. Trees Oil Company in his own behalf and in behalf of such other stockholders as might desire to join with him. The court there found as to the appellant in the case now before us, "H. S. Glenn is a brother of the plaintiff; up to the time of the sale of the company's property he was a business partner of the plaintiff and although he is not named as party plaintiff he has the same interest in the suit as the plaintiff has and is sharing in the expense of the suit." Under this finding appellant was as much bound by the adjudication and decree entered in that proceeding as was his brother.

But the original bill was not the only litigation against appellees in which the Glenn brothers have indulged themselves. In 1925 they brought an action at law against appellees in the Common Pleas of Allegheny County for the purpose of relitigating the matters determined in that court in the original equity proceeding. They were enjoined from carrying on their suit on the grounds that it was vexatious and involved a stale claim. Following this, in May, 1929, the Glenn brothers petitioned the Allegheny Court to open its original decree, alleging after-discovered evidence. This petition was dismissed and its dismissal was affirmed on appeal (300 Pa. 53).

In May, 1932, appellant, who is a resident of Allegheny County, filed the bill now before us in Butler County and served it upon Trees, who is also a resident of Allegheny County, when the latter was temporarily in Butler County. We held the service good (314 Pa. 550), but determined nothing more.

Thereafter the bill before us was filed in the Common Pleas of Allegheny County by the appellees against appellant to restrain him from prosecuting the suit in Butler County and the court enjoined him. From the decree forbidding him to proceed he prosecutes this appeal.

Without encumbering this opinion by reciting the details of the original equity proceeding in Allegheny County, we are unhesitatingly in agreement with the court below that what it determined is res judicata as to the cause of action set forth in the case in Butler County. It is urged by counsel that the matters with which the Butler County action is concerned have not been previously litigated. On the contrary, the record shows that the same matters were involved in the Allegheny County proceeding begun in 1916. The object of the Butler County action is to obtain discovery and accounting of certain shares of stock and cash alleged to have been received by plaintiffs as the price for property sold to the Arkansas Natural Gas Company; in the 1916 suit this transaction was set forth in the bill and the court was specifically asked, inter alia, to order a discovery of the agreement with the Arkansas Natural Gas Company. While apparently this was considered a somewhat minor matter at that time, there can be no doubt that, in refusing discovery of the whole transaction in 1916, the question now sought to be litigated was disposed of, for the greater includes the less. Defendant's suit to have this matter tried again in a new forum is clearly vexatious.

These conclusions bring us to the consideration of the fundamental proposition before us. May the Allegheny County Court restrain appellant from proceeding with his suit in Butler County? We are clear in our view that it can.

Appellant's counsel argue that equity will refuse to enjoin a party from proceeding in equity. They are mistaken in this. Under certain conditions an equity court will issue its process to restrain a litigant from proceeding in another equity tribunal. The general governing principle is thus stated in 14 R. C. L., page 410: "The theory on which a court of equity acts in enjoining a proceeding in another court of coördinate jurisdiction is that it has jurisdiction in personam, and that, so acting,

it has power to require the defendant to do, or to refrain from doing, anything beyond the limits of its territorial jurisdiction, which it might require to be done or omitted within the limits of such territory. In such a case it may restrain a party from prosecuting a subsequent suit in another jurisdiction, whether the objects of the two suits are the same or not, if the effect of the second suit is to withdraw from the court first acquiring jurisdiction a part of the subject-matter of the first suit. When an injunction is granted for this purpose, it is in no just sense a prohibition to those courts in the exercise of their jurisdiction. It is not addressed to them and does not even assume to interfere with them. The process is directed only to the parties. It neither assumes any superiority over the court in which the proceedings are had, nor denies its jurisdiction."

While it has been held that as a general rule a court of equity will refuse to enjoin a party from proceeding with a suit in equity, and appellant's solicitors cite to us 32 C. J., section 126, page 110, as authority for this principle, they fail to cite in full the doctrine there announced. It is there stated: "However, a court of equity has 'power' to enjoin a party from proceeding with other equitable suits, and such an injunction, when issued, is not void and must be obeyed; but the power should be exercised only in extreme cases. The court first acquiring jurisdiction of a case will protect that jurisdiction by enjoining an action by the same parties on the same subject-matter in another court, even though that other court may also have equity jurisdiction. . . . A bill of peace lies to prevent a multiplicity of suits, even though the suits may themselves be in courts of equity."

In Conover v. Mayor of New York, 25 Barbour (N. Y.) 513, the Supreme Court of that state most convincingly thus spoke on the subject we are considering (page 527): "It was urged, on the argument, that injunctions in such cases had only been used to restrain suits in courts of law, and that such a remedy as to

suits in courts of equity had not been adopted in practice; and the fact must be very much so; for, until recently, no instance has occurred in this country, or in that whence we derive our jurisprudence, of the existence of two courts of equity in the same state, having concurrent jurisdiction in cases of the same class. Of course the practice cannot have obtained under such circumstances; but there is no reason, in principle, why, in cases of this kind, it should not be applied to a court of equity as well as to a court of law. . . . So, in the case of a bill of peace, which this case in all respects very much resembles, is there any reason to suppose that if the suits, which it would otherwise be proper to restrain, were pending in courts having equity as well as common law powers, they would not for that reason be restrained? If so, in this State, where all courts have equity as well as common law powers, the beneficent remedy known by that name must be abandoned, certainly where the suits to be restrained are in more than one court." The Court of Appeals of New York in Erie Ry. Co. v. Ramsey, 45 N. Y. 637, announced the doctrine that a court of equity has power by injunction to restrain proceedings in another equitable action and that the Supreme Court of that state, in one judicial district of the state, has jurisdiction to restrain by injunction equitable proceedings in another Supreme Court district. The court said (page 647) : "It would be too much to say that, in no case, can a court restrain the suitors in another court of coördinate powers. Thus the jurisdiction of a court of equity to interfere to prevent a multiplicity of suits, or to draw to one action cognate questions and interests sought to be litigated in many actions, is well established."

The Supreme Court of the United States in Kessler v. Eldred, 206 U. S. 285, 289, speaking of the general principle, used this language: "If rights between litigants are once established by the final judgment of a court of competent jurisdiction those rights must be recognized

in every way, and wherever the judgment is entitled to respect, by those who are bound by it. Having then by virtue of the judgment the right to sell his wares freely without hindrance from Eldred, must Kessler stand by and see that right violated, and then bring an action at law for the resulting damage or may he prevent the infliction of the unlawful injury by proceedings in personam in equity? . . . An action at law would be entirely inadequate to protect fully Kessler's unquestioned right, and, under these circumstances, though there may be no exact precedent, we think that the jurisdiction in equity exists."

We ourselves have affirmed the power to enjoin the prosecution of a proceeding, not strictly speaking one at law, in a court of coördinate jurisdiction in Kane & Elk R. R. Co. v. Pittsburgh & Western R. R. Co., 241 Pa. 608. In Kendall v. McClure Coke Co., 182 Pa. 1, we approved the action of a court of common pleas in enjoining a citizen of this State from prosecuting a proceeding in a Georgia court.

The courts of Minnesota sustained the power in Mann v. Flower, 26 Minn. 479, 5 N. W. 365. Of course, it is a well-known exercise of equitable jurisdiction to restrain litigants from proceeding at law in other forums. This was done in Alexander's Est., 214 Pa. 369, in which the power was exercised by the orphans' court to restrain a proceeding at law.

The Court of Common Pleas of Allegheny County, having obtained jurisdiction over the whole controversy between these parties, the litigation between them should be confined to it. "Where a court whose power is adequate to the administration of complete justice in the premises has acquired jurisdiction of a case, the litigation should be confined to that forum, and any attempt by either party to divert the litigation to another court will be restrained by injunction, especially after an adverse decision on the claim of the party seeking relief in a new forum. The observance of this rule is essential to

494

the due and orderly administration of justice and the integrity of judgments and decrees, and in order to render valid its operation it is not essential that the element of irreparable damage should be involved. Furthermore, the propriety of the remedy by injunction is not affected by the fact that the court subsequently acquiring jurisdiction of the matter has equity as well as common law powers." (32 C. J. 87.) In Old Dominion Copper Co. v. Bigelow, 203 Mass. 159, in which the Massachusetts court restrained Bigelow from further prosecuting an injunction suit in New Jersey, and from commencing or prosecuting any other suit or proceeding, either in law or in equity, except in the Massachusetts court, the general rule was thus stated (page 221): "It is a general principle of chancery jurisprudence that, as between courts of coördinate and concurrent jurisdiction, the court which first obtains possession of a transaction shall dispose of it without interference from any other courts. . . . The jurisdiction of courts of equity to restrain a citizen suitor from prosecuting litigation in another state is well settled."

The proceeding brought in Butler County is a vexatious one. What was said in Lyons v. Importers' & Traders' Nat. Bank, 214 Pa. 428, 434, can be appropriately repeated in this case: "For relief from the intolerable situation disclosed by the records in this case, and for protection from continued vexation by the appellant, the appellee filed her bill of peace and the amendment to it. The obvious design of such a bill is to procure repose from perpetual litigation, and, therefore, it is justly called a bill of peace. The general doctrine of public policy which in some form or other may be found in the jurisprudence of every civilized country, is that an end ought to be put to litigation, and above all to further litigation. If suits may be perpetually brought to litigate the same questions between the same parties or their privies as often as either should choose, it is obvious that remedial justice would become a mockery; for the termination of

one suit would only become the signal for the institution of a new one, and the expense might be ruinous to all the parties. The obvious ground of the jurisdiction of courts of equity in cases of this sort is to suppress useless litigation and to prevent a multiplicity of suits."

In his great work on Equity Jurisprudence, 14th. ed., volume 2, section 1226, page 582, Mr. Justice STORY, under the head "Injunction to Suppress Vexatious Litigation" has the following to say: "Another class of cases of an analogous nature to which the process of injunction is also most beneficially applied is to suppress undue and vexatious litigation. We have already seen the manner in which it is applied in cases of bills of peace. But courts of equity are not limited in their jurisdiction to cases of this sort. On the contrary they possess the power to restrain and enjoin parties in all other cases of vexatious litigation. Thus for instance where a party is guilty of continual and repeated breaches of his covenants; although it may be said that such breaches may be recompensed by repeated actions of covenant, yet a court of equity will interpose and enjoin the party from further violations of such covenants. For it has been well remarked that the power has in many instances been recognized at law as resting on the very circumstance that without such interposition the party can do nothing but repeatedly resort to law; and when suits have proceeded to such an extent as to become vexatious, for that very reason the jurisdiction of a court of equity attaches."

As a result of our determination of the main question involved, others raised by appellant become immaterial.

Decree affirmed at appellant's cost.