**Rhoda GERSHMAN, Appellant,**

v.

**Robert H. FINCH, Secretary of Health, Education and Welfare, Appellee.**

**No. 71–1052.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1971.

Decided Dec. 15, 1971.

**230**

Samuel Shepard Jones, Jr., Washington, D. C. (Court-assigned counsel), Hogan & Hartson, Washington, D. C., for appellant.

Jean G. Rogers, Asst. U. S. Atty. (George Beall, U. S. Atty., on brief), for appellee.

Before WINTER and BUTZNER, Circuit Judges, and DUPREE, District Judge.

WINTER, Circuit Judge:

Plaintiff, Rhoda Gershman, sought review of the Secretary's denial of her claim for mother's insurance benefits as the divorced former wife of a deceased wage earner. Her companion claim for benefits for her children was allowed. The Secretary concluded that plaintiff was not receiving at least one-half of her support from her deceased husband at the time of his death; and the district court, concluding that there was substantial evidence to support this finding, affirmed the Secretary's determination. We disagree and reverse, remanding the case for entry of an appropriate order.

I

Plaintiff and Benjamin Gershman were married in Philadelphia, Pennsylvania, in 1941. Two children were born of the marriage: Michael, born in 1945, and Lois, born in 1949. In December, 1950, plaintiff and her husband separated and, in 1951, divorce proceedings were instituted in the Court of Common Pleas, Philadelphia, Pennsylvania, and resulted in the entry of a decree. In December, 1951, the parties entered into a written separation agreement and, in April, 1952, a final decree of divorce was granted. Following the separation and subsequent divorce, the children remained in the care and custody of plaintiff until Michael was of an age to establish his own residence and Lois reached eighteen and married. To date, plaintiff has not remarried. Mr. Gershman, an insured wage earner, died in January, 1960.

Under Pennsylvania law alimony pendente lite is allowable in all cases, Commonwealth v. Scholl, 156 Pa.Super. 136, 39 A.2d 719 (1944); but, upon the grant or refusal of a divorce a vinculo matrimonii, alimony must cease, except in the case of a wife who is insane. See, Hooks v. Hooks, 123 Pa.Super. 507, 187 A. 245 (1936); 23 Purdon's Pa. Stat.Ann. §§ 46, 47 (1955). See also, Commissioner of Internal Revenue v. Mesta, 123 F.2d 986 (3 Cir. 1941), cert.

den., 316 U.S. 695, 62 S.Ct. 1290, 86 L. Ed. 1765 (1942). The separation agreement between the parties provided that Mr. Gershman would pay $50.00 per week for the support and maintenance of plaintiff and their two children until a final decree of divorce was granted. Thereafter, he was to continue to pay $50.00 each week, but the agreement provided that this money was to be paid to plaintiff "as beneficiary for the two minor children . . . until the said minor children reached the age of eighteen or have fully completed their education." After cessation of the children's support, plaintiff was to receive $10.00 per week provided she did not remarry.[1]

After the divorce was granted, Mr. Gershman made payments in accordance with the agreement, although frequently plaintiff was required to resort to the courts to obtain them. These payments were the sole means of support for plaintiff and her children. She had no other income and she was not employed.[2] The payments thus provided food, housing and other necessities for plaintiff and her two children. On a number of occasions plaintiff resorted to the district attorney's office in Philadelphia in an effort to obtain more money. At one point the weekly payments were increased by court order to $53.00 per week, although they were later cut back to $50.00, as provided in the agreement. Plaintiff was required to account to the district attorney's office as to how she spent the money and she showed that the $50.00 weekly payments were used for her own support, as well as that of her children. There was also evidence that the attorneys who prepared the separation agreement and the court granting the divorce were all aware that plaintiff would and did apply the payments to her as "beneficiary"[3] for the children for her own support, as well as that of the children, and there was no suggestion that this would be improper.

Following the death of her husband, plaintiff sought mother's and child's insurance benefits from the Social Security Administration. Although her application for the children was granted, the application for herself was denied on the ground that she did not show that she had received support from her husband *pursuant to agreement or court order*, as the statute then required.[4] Judicial review was not sought.

After the 1965 amendments, plaintiff filed another application, seeking bene-

[1.] It is said that the agreement also provided that if a decree was granted, Mr. Gershman would assign his interest in a house owned jointly by the parties to plaintiff, that he would convey to her certain personal property, and that he would assign to her certain life insurance policies. The parties' formal agreement was received as an exhibit in the proceedings before the Secretary but, unfortunately, the copy included in the administrative record filed with the district court and the copy contained in the administrative record furnished to the members of this court is absolutely illegible. The matter would seem of little moment, however, since plaintiff's testimony, totally undisputed, is that at the time the parties separated their house was being offered for sale and they had practically no equity in it. The house was subsequently sold. Plaintiff also testified that she received from her husband neither personal property nor insurance, as provided in this agreement.

Similarly, the decree of divorce is illegible. Apparently it was silent on the subject of alimony in accordance with Pennsylvania law.

2. The record contains evidence that because of the chronic illness of one of the children, she could not be absent from the home.

3. The word is a misnomer. "Trustee" or "guardian" would have been more accurate.

4. 42 U.S.C.A. § 402(g) (1) (F) (i) then provided that a surviving divorced mother (not remarried) was entitled to benefits for herself if, *inter alia*, at the wage earner's death she was receiving at least one-half of her support from the deceased wage earner, *"pursuant to agreement or court order."* (emphasis supplied) The statute was amended in 1965 by Pub. L. 89–97 §§ 306(c) (7) and 308(d) (3)–(5); 79 Stat. 286.

fits for herself. The application was filed March 30, 1966, and sought retroactive benefits for the twelve months preceding (42 U.S.C.A. § 402(j) (1), as well as future benefits.[5]

The second application went to hearing and, notwithstanding the uncontradicted testimony of plaintiff that she was supporting herself from the payments made to her as "beneficiary" for her children, corroborated by the evidence of the attorneys with knowledge of her personal situation and an assistant district attorney of Philadelphia, the claim was denied on the ground that "[t]he wording of the agreement, and of the court order in effect at the time of the death of the wage earner, provided only for the support of the children, and did not provide support or maintenance of claimant. The $50.00 contributions clearly were specified for the support of the children." In deciding that there was substantial evidence to support the Secretary's determination, the district court apparently concluded that the recitals in the support agreement and the decree granting the divorce constituted substantial evidence to support the Secretary's determination.[6]

## II

The decision in this case turns upon the 1965 amendments to 42 U.S.C.A. § 402(g) (1) (F) (i) insofar as eligibility is dependent upon support from the deceased wage earner. That portion of the statute, as amended, requires the claimant to show

(I) *she was receiving at least one-half of her support,* as determined in accordance with regulations prescribed by the Secretary, from such individual, *or*

(II) she was receiving substantial contributions from such individual (pursuant to a written agreement), *or*

(III) there was a court order for substantial contributions to her support from such individual. (emphasis supplied)[7]

When compared with the statute as it existed prior to the amendment, the amended statute eliminates the requirement that at least one-half of the claimant's support be received "pursuant to agreement or court order." The legislative history of the amendment does not illuminate the amendment, although illumination would seem unnecessary in the light of the obvious inference to be drawn from the elimination of the quoted language. Indeed, the Secretary's regulation, 20 C.F.R. § 404.350(a) states that prior to the 1965 amendments, a claimant was required to show that one-half of her support was received *pursuant to agreement or court order,* but that proof of such technical niceties is not required for the period after the 1965 amendments.

Given the indisputable proposition that since the 1965 amendments a claim-

---

5. As a result of subsequent events, the future benefits would be small, although the record does not reflect their precise amount. Michael ceased attending school in June, 1966, and became employed, and Lois reached the age of eighteen and married in May, 1967. Plaintiff, therefore, could in no event be eligible for benefits after April, 1967, since this was the month preceding the month in which "no child of such deceased individual is entitled to a child's insurance benefit . . .," a condition terminating eligibility. 42 U.S.C.A. § 402(g) (1).

6. In fairness to the district court, it must be noted that throughout the proceedings on judicial review, the Secretary has evidenced considerable confusion as to the correct statute which governs the outcome. It cannot be said with certainty that the 1965 amendments which we consider crucial were brought to the attention of the district judge.

7. The regulations, adopted to flesh out ¶ (I), state simply that a claimant is considered in receipt of one-half of her support from a wage earner at his death if, for the previous twelve months he "made regular contributions, in cash or in kind, to such person's support and the amount of such contributions equaled or exceeded one-half of such person's support during such period." 20 C.F.R. § 404.349(b) et seq.

ant is not required to show that at least one-half of her support was received "pursuant to agreement or court order," we view the test of whether she received one-half of her support from the deceased wage earner as a pure question of fact. And in the instant case we view the record as showing, equally indisputable, that plaintiff did receive at least one-half of her support from her deceased husband. Of course, the agreement specified that the moneys she received were received as "beneficiary" for her minor children and that after the deceased wage earner's obligation to support them terminated, she would receive only $10.00 per week from him for herself. We recognize that the agreement does constitute some evidence of the nature of the $50.00 weekly payments, but the explanation that these payments, irrespective of how they were formally designated, were intended to be applied and were applied as the sole means of support for her, as well as her children, is not controverted. We infer that the deceased wage earner, and his attorneys, termed the payments as solely child support not only to meet Pennsylvania's prohibition against payment of alimony to a sane, divorced wife, but also to preserve for him the full dependency deduction for federal income tax purposes for his children whom he was supporting.

We conclude that there was not substantial evidence for the Secretary's determination; and, since the uncontroverted, corroborated evidence that the purported payments for support of the children were plaintiff's sole means of support, there is no further factual determination to be made by the Secretary. We are thus warranted in directing that plaintiff's claim for herself be allowed.

Schroeder v. Hobby, 222 F.2d 713 (10 Cir. 1955), relied upon by the Secretary, does not require a contrary result. In *Schroeder* the wage earner conveyed certain rental property to the claimant as part of a property settlement incident to divorce, and there it was found that the parties intended that the rent generated by the property was intended to be the husband's exclusive provision for his former wife's support. The husband also paid $100.00 per month for the support of his children, and there was evidence that the divorced wife diverted the child support payments, in whole or in part, to maintain the rental property. Nevertheless, it was held the surviving divorced wife was not entitled to benefits, because the death of the wage earner did not cause any impact upon the divorced wife's economic condition and her diversion of child support payments made no difference, since it had been intended that she was to be supported from the rentals and not from the payments made for the children. Moreover, *Schroeder* was a pre-1965 Social Security amendments case, and that there was no reason for the court not to adhere strictly to the designations contained in the property settlement and divorce decree. By contrast, the record in this case establishes that plaintiff suffered a complete loss of economic support when Mr. Gershman died.

Similarly, we think Adair v. Finch, 421 F.2d 652 (10 Cir. 1970), inapposite. It, too, concerned a property settlement incident to divorce, undisturbed by the former husband's subsequent death, and not periodic payments from the former husband. Additionally, *Adair*, as well as *Schroeder*, was decided in a community property state where, as the Tenth Circuit indicated, "income from community property awarded to the wife as her sold and separate property [does not] constitute . . . a contribution from her former husband." 421 F.2d at 654.

### III

The judgment of the district court is reversed, and the case is remanded for entry of a judgment in accordance with this opinion.

Reversed and remanded.