Stambaugh, Appellant, *v.* Stambaugh.
Stambaugh *v.* Stambaugh, Appellant.

Argued May 3, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

reargument refused December 27, 1974.

*Garland D. Cherry*, with him *John W. Nilon, Jr.*, and *Kassab, Cherry & Archbold*, for appellant at No. 178, and appellee at No. 179.

*Harold Cramer*, with him *Richard B. Schiro*, and *Mesirov, Gelman, Jaffe & Levin*, for appellant at No. 179, and appellee at No. 178.

OPINION BY MR. JUSTICE MANDERINO, October 16, 1974:

Esther S. Stambaugh and J. H. William Stambaugh were married in 1935 and resided in Delaware County, Pennsylvania, until they separated on July 13, 1966. About three months after the separation, on October 18, 1966, the wife commenced an action in Delaware County requesting a decree of divorce from bed and

board. That action was still pending when the husband, who had moved to Florida in 1966, commenced an action in Florida on February 20, 1969, requesting a divorce from the bond of matrimony. On March 14, 1969, the Pennsylvania court in which the wife's action was pending, entered an order enjoining the husband from proceeding with his action for divorce in Florida and further enjoined the husband from proceeding with any action in any other jurisdiction. The Florida action continued, nonetheless, and on June 26, 1969, a final decree of divorce was entered in Florida. Subsequently, the wife's Pennsylvania action was concluded and on March 21, 1972, the Pennsylvania court entered a final decree (1) declaring that the marriage contract was not affected by the Florida divorce decree, (2) granting the wife a divorce from bed and board, (3) awarding alimony pendente lite of four hundred fifty dollars per week, effective March 6, 1970, and (4) awarding permanent alimony of three hundred seventy-five dollars per week effective at the termination of the award for alimony pendente lite.

Both parties appealed to the Superior Court. That court unanimously held that the husband's Florida divorce decree was entitled to full faith and credit since the husband was domiciled in Florida. It therefore ordered a modification of that portion of the final decree declaring that the marriage contract was not affected by the Florida decree. The Superior Court, however, was divided on whether the wife was entitled to alimony. *Stambaugh v. Stambaugh*, 222 Pa. Superior Ct. 360, 294 A.2d 817 (1972) (Judge HOFFMAN dissenting, joined by Judges JACOBS and CERCONE). Both parties filed petitions for allowance of appeal which were granted by this Court.

The first issue raised in these appeals is whether Pennsylvania should give full faith and credit to the Florida divorce decree. We conclude that it must and,

therefore, affirm the Superior Court order as to that issue.

It is well established that once Florida has granted a divorce decree that decree is presumptively valid in this jurisdiction. *Esenwein v. Commonwealth ex rel. Esenwein*, 325 U.S. 279, 89 L.Ed. 1608, 65 S. Ct. 1118 (1945); *Williams v. North Carolina (II)*, 325 U.S. 226, 89 L.Ed 1577, 65 S. Ct. 1092 (1945). Such a decree is "a conclusive adjudication of everything involved therein except the jurisdictional facts on which it is founded . . .," *Commonwealth ex rel. McVay v. McVay*, 383 Pa. 70, 73, 118 A.2d 144, 146 (1955), and bona fide domicile is the essential jurisdictional fact necessary to give any decree extraterritorial effect. *See Williams v. North Carolina (I)*, 317 U.S. 287, 297-98, 87 L.Ed 279, 285-86, 63 S. Ct. 207, 212-13 (1942); *Commonwealth ex rel. McVay v. McVay*, supra; *Commonwealth ex rel. Meth v. Meth*, 156 Pa. Superior Ct. 632, 41 A.2d 752 (1945). Additionally "the burden rests heavily" upon the party attacking the decree to show that jurisdiction was in fact lacking. *Williams v. North Carolina (II)*, 325 U.S. 226, 233, 89 L.Ed. 1577, 1584, 65 S. Ct. 1092, 1097 (1945). *See Commonwealth ex rel. Lorusso v. Lorusso*, 189 Pa. Superior Ct. 403, 150 A.2d 370 (1959); *Commonwealth v. Petrosky*, 168 Pa. Superior Ct. 232, 77 A.2d 647 (1951); *Commonwealth ex rel. Meth v. Meth*, 156 Pa. Superior Ct. 632, 41 A.2d 752 (1945).

Here the trial court found that the husband had not established a valid domicile in Florida and therefore his Florida decree was not entitled to full faith and credit. The Superior Court unanimously reversed that determination. The wife asserts that since the trial court found that her husband was not a Florida domiciliary, the Superior Court was powerless to alter that finding of fact. The issue of domicile, however, is a mixed question of law and fact reviewable by an appellate court. In *Dorrance's Estate*, 309 Pa. 151, 156, 163

A. 303, 304 (1932), this Court held: "The determination of . . . domicile . . . is a conclusion of law, based upon facts, most of which are undisputed. Furthermore . . . where a finding of fact is simply a deduction from other facts reported by the tribunal under review, and the ultimate fact in question is purely the result of reasoning, we are competent to judge of its correctness and will draw our own conclusions from the facts as reported." *Accord, Smith v. Smith,* 364 Pa. 1, 70 A.2d 630 (1950).

The record establishes that the husband, upon moving to Florida, purchased a home there and resided in Florida for about two years before instituting his divorce action. He registered his automobile in Florida and enrolled himself as a voter there. He also opened a bank account in Florida, joined a church and several civic organizations, and paid Florida taxes. Apparently because his business remained in Philadelphia the husband found it necessary to retain certain contacts in Pennsylvania. Consequently he maintained a personal checking account in Philadelphia, filed his personal federal income tax return from Philadelphia, and maintained various charge accounts and club memberships in Philadelphia. After securing his divorce decree in Florida and remarrying he immediately leased an apartment for a one year term in Philadelphia, which he occupied when not in Florida. The evidence adduced was inconclusive regarding exactly how much time he actually spent in Pennsylvania and how much time he spent in Florida. Upon this evidence the Superior Court determined that the wife had failed to meet her burden of establishing that her husband was not a Florida domiciliary.

The wife argues, however, that because the evidence indicates her husband was living in Pennsylvania a "substantial" part of the period in question he was not actually a valid domiciliary of Florida. It is well

settled, though, that a person may maintain business interests outside the state of his domicile and in fact live outside of his domiciliary state as long as he possesses the requisite intention to return to that state. *Smith v. Smith*, 364 Pa. 1, 70 A.2d 630 (1950). In *Smith*, this Court was presented with a similar factual situation where the husband had many business interests outside of Florida, his adopted domicile, including some interests in Pennsylvania. He also spent about half of his time living outside of Florida. There, this Court held that such facts did not preclude a finding that the husband was a bona fide Florida domiciliary. We therefore agree with the Superior Court's determination that the husband was a bona fide domiciliary of Florida. Accordingly, the Florida divorce decree may not be denied full faith and credit because, here, valid domicile in the state rendering the decree, the essential jurisdictional prerequisite, was in fact present.

The wife also argues that Pennsylvania should deny full faith and credit to the Florida divorce decree since it was obtained by the husband after the issuance of an anti-suit injunction by the trial court which had personal jurisdiction over the husband. We cannot agree.

The only proper basis for denying full faith and credit to an out-of-state divorce decree is lack of jurisdiction. "A judgment in one State is *conclusive* upon the merits in every other State, . . . if the court of the first State . . . had jurisdiction . . . to render the judgment." (Emphasis added.) *Williams v. North Carolina (II)*, 325 U.S. 226, 229, 89 L.Ed. 1577, 1581, 65 S. Ct. 1092, 1095 (1945); *Commonwealth ex rel. McVay v. McVay*, 383 Pa. 70, 73, 118 A.2d 144, 146 (1955). The jurisdiction of a state to enter a divorce decree is dependent solely upon the domicile of one spouse. *Williams v. North Carolina (I)*, 317 U.S. 287, 87 L.Ed. 279, 63 S. Ct. 207 (1942); *Williams v. North Carolina (II)*, supra;

*Commonwealth ex rel. McVay v. McVay,* supra. Since the issuance of an anti-suit injunction cannot affect one's domicile, it cannot affect a state's obligation to give full faith and credit to an out-of-state divorce decree.

Moreover, we have consistently held that an anti-suit injunction may not properly issue where it is established that the enjoined spouse is a domiciliary of another state. In *Smith v. Smith,* 364 Pa. 1, 4, 70 A.2d 630, 632 (1950), in affirming the dismissal of a bill in equity brought by one spouse seeking to enjoin a divorce proceeding in Florida by the other spouse, we said: "Under Williams v. North Carolina (No. 1), 317 U.S. 287, a divorce granted by a court of the bona fide domicile of either spouse is valid and must be given full faith and credit. The only ground upon which a divorce decree of another jurisdiction may be attacked is that it was not the bona fide domicile of either spouse: Williams v. North Carolina, 325 U.S. 226; Commonwealth ex rel. Esenwein v. Esenwein, 348 Pa. 455, 35 A.2d 335. Since equity has no power to restrain a person from obtaining a lawful divorce, it follows that an injunction may only be granted where the spouse has not established a bona fide domicile in the state in which the divorce is sought." In *March Estate,* 426 Pa. 364, 231 A.2d 168 (1967), we reversed an anti-suit injunction prohibiting one spouse from continuing with a divorce proceeding in Nevada because it was established that the enjoined spouse was a domiciliary of Nevada. We gave full faith and credit to the divorce decree obtained in Nevada. In *Monihan v. Monihan,* 438 Pa. 380, 264 A.2d 653 1970), although we affirmed the grant of an anti-suit injunction prohibiting one spouse from continuing with a Nevada divorce proceeding, we did so only because it was established that the enjoined spouse was not a domiciliary of Nevada. In *Knaus v. Knaus,* 387 Pa. 370, 127 A.2d 669 (1956),

we reversed a contempt citation against a spouse who had proceeded with a divorce action and obtained a valid divorce decree in Arkansas after the issuance of a Pennsylvania anti-suit injunction. In *Wallace v. Wallace*, 371 Pa. 404, 411, 89 A.2d 769, 772 (1952), we reversed an injunction, and gave full faith and credit to a Florida divorce decree, saying: "The record shows that not only was defendant capable of establishing a domicile in Florida but also that he did in fact establish it there. The Florida divorce decree was, therefore, valid and this bill in equity must be dismissed."

Although we have in some cases upheld the validity of anti-suit injunctions, we have done so only in cases where there was no claim before the Court that the enjoined spouse was an out-of-state domiciliary. *See Wenz v. Wenz*, 400 Pa. 397, 162 A.2d 376 (1960); *Rothman v. Rothman*, 425 Pa. 406, 228 A.2d 899 (1967); *Linett v. Linett*, 434 Pa. 441, 254 A.2d 7 (1969). In the case before us, the enjoined husband was an out-of-state domiciliary. The anti-suit injunction, therefore, should not have been granted and its issuance is not a proper basis for denying full faith and credit to the Florida divorce decree.

The next issue is whether the wife is entitled to permanent alimony. Although the Florida decree is entitled to full faith and credit, and is effective as to the marital status of the parties because the husband was a domiciliary of Florida, it is not controlling on the alimony issue since Florida did not have in personam jurisdiction over the wife. "The result in this situation is to make the divorce divisible—to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony. It accomomdates the interests of both Nevada and New York in this broken marriage by restricting each State to the matters of her dominant concern." *Estin v. Estin*, 334 U.S. 541, 549, 92 L.Ed. 1561, 1569,

68 S. Ct. 1213, 1218 (1948). *Accord, Kreiger v. Kreiger,* 334 U.S. 555, 92 L.Ed. 1572, 68 S. Ct. 1221 (1948); *Armstrong v. Armstrong,* 350 U.S. 568, 100 L.Ed. 705, 76 S. Ct. 629 (1956); *Vanderbilt v. Vanderbilt,* 354 U.S. 416, 1 L.Ed.2d 1456, 77 S. Ct. 1360 (1957).

The Florida decree is thus ineffective on the issue of permanent alimony. It does not follow, however, that the wife is entitled to such alimony. The Restatement of Conflicts Second §77, comment f. states: "Although full faith and credit does not bar a wife from seeking support from a husband who has previously obtained an *ex parte* divorce, she may nevertheless be *unable to obtain such relief.* This is because a valid divorce decree severs the marital relationship and *the local law of some States makes no provision for requiring an ex-husband to support an ex-wife.*" (Emphasis added.)

The law of Pennsylvania does not provide for an award of permanent alimony after a divorce from the bond of matrimony. *Hooks v. Hooks,* 123 Pa. Superior Ct. 507, 187 A. 245 (1936); *Commonwealth ex rel. Branch v. Branch,* 175 Pa. Superior Ct. 373, 104 A.2d 183 (1954); *Commonwealth ex rel. McCormack v. McCormack,* 164 Pa. Superior Ct. 553, 67 A.2d 603 (1949); *Commonwealth v. Kurniker,* 96 Pa. Superior Ct. 553 (1929); *Commonwealth v. Parker,* 59 Pa. Superior Ct. 74 (1915); *see,* The Divorce Law, Act of May 2, 1929, P. L. 1237, §10 et seq., as amended, 23 P.S. §10 et seq. *See also, Gershman v. Finck,* 454 F.2d 229 (4th Cir. 1971).

In *Commonwealth ex rel. Esenwein v. Esenwein,* 348 Pa. 455, 35 A.2d 335 (1944), this Court said that a husband was entitled to a revocation of a Pennsylvania alimony award if he had obtained a valid Nevada divorce. More recently, in *Commonwealth ex rel. McVay v. McVay,* 383 Pa. 70, 72, 118 A.2d 144, 146 (1955), we said that if the full faith and credit clause "requires

that the Nevada divorce be recognized in this Common-wealth [the husband's] obligation to support his wife ceased automatically when the divorce was granted. . . ." Although in both *Esenwein* and *McVay,* we held that the Nevada decrees were invalid on jurisdictional grounds, we recognized and restated the long-established law of Pennsylvania that a permanent alimony award is improper following a divorce from the bond of matrimony. Even in cases involving a spouse's property rights, other than alimony, we have held that a valid divorce decree of another state has the same effect as a valid Pennsylvania divorce decree on the property rights of a spouse. In *March Estate,* 426 Pa. 364, 231 A.2d 168 (1967), a Pennsylvania widow filed an election to take against her husband's will. The issue was whether the widow's property rights had been terminated following a valid ex parte Nevada divorce decree. We held, citing our decisions in *McVay* and *Esenwein,* that the widow's property rights were terminated under Pennsylvania law.

*Estin v. Estin, supra,* permitted the State of New York to award permanent alimony even though another state had validly granted an ex parte divorce. *Estin,* however, did so only after finding that the substantive law of New York provided for permanent alimony after a divorce from the bond of matrimony. *Estin* did not sanction a state policy on permanent alimony which treats out-of-state ex parte divorces differently from divorces granted in-state. *Estin* said ". . . it will be time enough to consider the effect of any discrimination shown to out-of-state ex parte divorces when a State makes that its policy." 334 U.S. 541, 549, 92 L.Ed. 1561, 1569, 68 S. Ct. 1213, 1219 (1948). Pennsylvania, which permits in-state ex parte divorces, has not adopted any policy of discrimination against out-of-state ex parte divorces. *Nixon v. Nixon,* 329 Pa. 256, 198 A. 154 (1938). Pa. R. C. P. 1124. The Pennsylvania divorce

law does not provide for alimony following *any* divorce from the bond of matrimony, except in cases of insanity. The Divorce Law, Act of May 2, 1929, P. L. 1237, §45, *as amended*, 23 P.S. §45. If any changes are to be made in Pennsylvania's divorce law, such change must be made by the legislature.

Although the decree in this case erroneously awarded permanent alimony, the decree properly permitted alimony pendente lite. Such alimony is permitted in Pennsylvania. The Divorce Law, Act of May 2, 1929, P. L. 1237, §46, *as amended* 23 P.S. §46. The trial court's award of alimony pendente lite is therefore affirmed. *Commonwealth v. Callen*, 165 Pa. Superior Ct. 163, 67 A.2d 610 (1949). *Scholl v. Scholl*, 154 Pa. Superior Ct. 57, 35 A.2d 528 (1944); *Foust v. Foust*, 144 Pa. Superior Ct. 513, 19 A.2d 517 (1941); *White v. White*, 106 Pa. Superior Ct. 85, 161 A. 464 (1932).

That portion of the order of the Superior Court modifying the trial court's decree as to the termination of the marriage contract is affirmed. That portion of the Superior Court's order affirming the trial court's grant of alimony pendente lite is also affirmed. In all other respects the order of the Superior Court is reversed.

Mr. Justice Nix took no part in the consideration or decision of this case.

---

Dissenting Opinion by Mr. Justice Roberts:

Mrs. Stambaugh is denied her right to permanent alimony solely on account of the majority's adherence to a conceptualization unrelated to the particular and exceptional facts of this case. Because no attempt is made to view functionally the relationship of the parties and the parties' (especially Mr. Stambaugh's) conduct, I dissent.

Although correctly holding that Mr. Stambaugh's ex parte Florida divorce is "ineffective on the issue of

permanent alimony," the majority mistakenly relies on the general rule of Pennsylvania substantive law that a divorce from the bonds of matrimony terminates any right to support. The majority errs by not adequately considering the effect of Mr. Stambaugh's disobedience of a valid and final anti-suit injunction obtained by Mrs. Stambaugh, enjoining him from prosecuting a divorce in a state other than Pennsylvania.

To reach its result, the majority is forced to utilize the overly-broad language of *Smith v. Smith,* 364 Pa. 1, 4, 70 A.2d 630, 632 (1950) : "Since equity has no power to restrain a person from obtaining a lawful divorce, it follows that an injunction may only be granted where the spouse has not established a bona fide domicile in the state in which the divorce is sought." Although this articulation has been used on other occasions, e.g., *Monihan v. Monihan,* 438 Pa. 380, 382, 264 A.2d 653, 653 (1970),[1] it is predicated on a fundamental misunderstanding of the powers of a court of equity.[2]

---

[1] See also *Wallace v. Wallace,* 371 Pa. 404, 89 A.2d 769 (1952). That case is distinguishable. There, the injunction was issued after the husband had already obtained a foreign divorce. The decree entered enjoined the husband "from doing anything in Pennsylvania to affect [the wife's] marital status or her property rights incident to that relationship." Id. at 407, 89 A.2d at 770.

Although the parties were married in Pennsylvania, they moved immediately to Florida. They lived together there until the wife left the husband and returned to Pennsylvania. This Court had no problem in concluding that the husband was a bona fide domiciliary of Florida. Having concluded that, the Court was required under *Williams v. North Carolina,* 317 U.S. 287, 63 S. Ct. 207 (1942), to recognize the Florida divorce on the issue of marital status.

[2] *March Estate,* 426 Pa. 364, 231 A.2d 168 (1967), and *Knaus v. Knaus,* 387 Pa. 370, 127 A.2d 669 (1956), relied upon by the majority, are inapposite.

In *March Estate,* this Court reversed a chancellor's refusal to vacate a widow's election to take against the will of her one-time husband, because she had not met her burden under the full faith and credit clause of overcoming the presumption of validity of a

A court of equity plainly has the power to restrain a person from prosecuting a suit in another state (though it be lawful to do so in that state), if the enjoining court has jurisdiction over the person to be enjoined and if the foreign prosecution will offend a policy of the enjoining state. This much was recognized by the Supreme Court of the United States as long ago as 1877. "Dehon v. Foster, 4 Allen, 545, is the leading case upon the subject, argued by eminent counsel on both sides, and decided upon great consideration. The Supreme Judicial Court of Massachusetts, speaking through BIGELOW, C. J., points out that the jurisdiction of a court, as a court of chancery, to restrain persons within its jurisdiction from prosecuting suits, upon a proper case made, either in the courts of Massachusetts or in other States or foreign countries, rests on the clear authority vested in courts of equity over persons within the limits of their jurisdiction and amenable to process, to stay acts contrary to equity and good conscience; and that, as the decree of the court in such cases is directed solely at the party, it is wholly immaterial that such party is prosecuting his action in the courts of another state or country." *Cole v. Cunningham*, 133 U.S. 107, 124, 10 S. Ct. 269, 275 (1890). And this rule applies to injunctions designed to halt

---

foreign divorce. That case did not involve the effect of an anti-suit injunction. Although such an injunction had been issued in that case, its existence or propriety was not pertinent to the ratio decidendi of that case. More fundamentally, this Court never stated that the enjoined spouse was a domiciliary of the state in which he obtained his divorce.

In *Knaus v. Knaus*, the reason the order committing appellant to jail until he purged himself of contempt was reversed had nothing to do with whether he was or was not a bona fide domiciliary of another state. Rather, that case rested on the ground that one cannot be imprisoned until he purges himself of contempt by doing "something which is apparently beyond his power to do . . . ." 387 Pa. at 380, 127 A.2d at 674.

the prosecution of a divorce in another jurisdiction. See, e.g., *Linett v. Linett*, 434 Pa. 441, 444-45, 254 A.2d 7, 9 (1969); *Rothman v. Rothman*, 425 Pa. 406, 408, 228 A.2d 899, 901 (1967); *Wenz. v. Wenz*, 400 Pa. 397, 399, 162 A.2d 376, 377 (1960). See also *James v. Grand Trunk Western R.R.*, 14 Ill.2d 356, 152 N.E.2d 858, cert. denied, 358 U.S. 915, 79 S. Ct. 288 (1958); *Hammer v. Hammer*, 303 N.Y. 481, 104 N.E.2d 864 (1952); *Garvin v. Garvin*, 302 N.Y. 96, 96 N.E.2d 721 (1951).

The unnecessarily broad language of *Smith v. Smith*, 364 Pa. at 4, 70 A.2d at 632, is also based on a misreading of *Williams v. North Carolina*, 317 U.S. 287, 63 S. Ct. 207 (1942) (*Williams I*). That case did not pass on whether an anti-suit injunction was constitutional. *Cole v. Cunningham*, 133 U.S. 107, 10 S. Ct. 269 (1890), had decided that question long before; under *Cole*, an anti-suit injunction violates neither the full faith and credit clause nor the privileges and immunities clause of the United States Constitution.

*Williams I* has relevance to the situation presented by a disobedience of an anti-suit injunction only because it restricts what sanctions a court may impose on the party who violates the court's injunction. According to the rule in *Williams I*, the enjoining state may not deny a foreign divorce full faith and credit if the spouse who obtained the divorce was a bona fide domiciliary of the foreign state. And this rule is even more limited. The United States Supreme Court has repeatedly held that a divorce valid under the law of a sister state is entitled to full faith and credit only as it speaks to marital status; it is not binding on the issue of alimony. *Estin v. Estin*, 334 U.S. 541, 549, 68 S. Ct. 1213, 1218 (1948) (recognizing divisible divorces). Accord, *Vanderbilt v. Vanderbilt*, 354 U.S. 416, 77 S. Ct. 1360 (1957); *Armstrong v. Armstrong*,

350 U.S. 568, 76 S. Ct. 629 (1956); *Kreiger v. Kreiger,* 334 U.S. 555, 68 S. Ct. 1221 (1948).

So, it can be seen that the majority's reliance on *Smith v. Smith* produces a decidedly anomalous result. If an anti-suit injunction is proper only when a spouse is not a valid domiciliary of a sister state, *Smith v. Smith,* and if an ex parte divorce decree need not be given full faith and credit if the spouse is not a domiciliary of the sister state, *Williams I,* then obtaining an anti-suit injunction is a meaningless gesture. There is little reason for an anti-suit injunction if the spouse's ex parte divorce is in any event not entitled to full faith and credit because it is invalid in the jurisdiction granting the divorce.

The logical, realistic, and reasonable rule is that once personal jurisdiction over a party is obtained, an anti-suit injunction, if warranted, may validly issue. Or, as Mr. Justice O'BRIEN succinctly stated for this Court in *Rothman v. Rothman,* 425 Pa. 406, 228 A.2d 899 (1967): "Inasmuch as appellant [the enjoined spouse] had submitted himself to the jurisdiction of the court in the previous actions, its decree in the equity action [i.e., issuance of an anti-suit injunction] may properly bind him." Id. at 409, 228 A.2d at 901. See also *Linett v. Linett,* 434 Pa. 441, 254 A.2d 7 (1969); *Wenz v. Wenz,* 400 Pa. 397, 162 A.2d 376 (1960). In short, an anti-suit injunction may issue even if the party to be enjoined is a bona fide domiciliary of a sister state.

It must also be noted that the Legislature foresaw that anti-suit injunctions may be necessary and specifically empowered our courts in matrimonial causes to issue such injunctions. "In all matrimonial causes the court shall have full equity power and jurisdiction, and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this act, and may grant such other

relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause." Act of May 2, 1929, P.L. 1237, § 55, as amended, 23 P.S. § 55(2) (Supp. 1974).

Two elements then are necessary for the valid issuance of an anti-suit injunction: jurisdiction over the party to be enjoined and a proper set of justifying facts. In the instant case, both elements are present.

As for jurisdiction, the majority does not question, as it could not, Pennsylvania's jurisdiction over Mr. Stambaugh. The record shows that although he was no longer residing in this state when his wife commenced her divorce suit in 1966, Mr. Stambaugh entered a general appearance through his attorney and filed an answer on the merits contesting the divorce. "A state has power to exercise judicial jurisdiction over an individual who enters an appearance as defendant in the action." Restatement (Second) of Conflicts of Laws § 33 (1971). Our cases are in accord that once a party enters a general appearance, he waives all objections to in personam jurisdiction. E.g., *Morell Estate*, 426 Pa. 528, 532, 233 A.2d 522, 524 (1967); *C.E. Williams Co. v. Henry B. Pancoast Co.*, 412 Pa. 166, 169, 194 A.2d 189, 190 (1963). The rationale for this rule is that the "individual's voluntary participation as a party in an action makes it reasonable for the state to exercise jurisdiction over him in that action." Restatement (Second) of Conflict of Laws § 33, comment a at 136 (1971).

Thus, the Pennsylvania court which entered the injunction against Mr. Stambaugh had in personam jurisdiction over him. And once personal jurisdiction attaches, this "jurisdiction continues throughout all subsequent proceedings which arise out of the original cause of action." Id. § 26.

The facts and circumstances, considered as a whole, demonstrate that a case has been made out for the issuance of the anti-suit injunction. First, Pennsylvania's contacts with the marriage are substantial. The parties were married in Pennsylvania in 1935, and lived together in Delaware County until 1966. Mrs. Stambaugh presently lives here. Although Mr. Stambaugh now resides in Florida, he maintains considerable contacts with Pennsylvania. For instance, since he moved to Florida, Mr. Stambaugh continues to remain active in the operations of his Philadelphia-based real estate firm.

Second, Pennsylvania obtained jurisdiction over this controversy almost three years prior to Mr. Stambaugh's filing for his ex parte Florida divorce. And the court had personal jurisdiction over both parties. It is well settled that a court " ' " may restrain a party from prosecuting a subsequent suit in another jurisdiction, whether the objects of the two suits are the same or not, if the effect of the second suit is to withdraw from the court first acquiring jurisdiction a part of the subject-matter of the first suit." ' " *Wenz v. Wenz*, 400 Pa. at 399, 162 A.2d at 377 (quoting *Trees v. Glenn*, 319 Pa. 487, 490-91, 181 A. 579, 580 (1935)).

Third, Pennsylvania has a substantial interest in providing Mrs. Stambaugh with her day in court on the question of permanent alimony. Mr. Stambaugh's Florida divorce was ex parte, and that court never obtained the in personam jurisdiction necessary to adjudicate Mrs. Stambaugh's personal rights. Ensuring that domiciliaries of this Commonwealth receive due process of law is a weighty consideration in deciding to issue an anti-suit injunction.

True, Mr. Stambaugh is a bona fide domiciliary of Florida. If the party to be enjoined is not a bona fide domiciliary of another state, certainly a much stronger case for an anti-suit injunction is presented. But this

fact is not determinative on the question whether an anti-suit injunction may validly issue. Rather, it is a factor to be weighed with all the others.

In light of all these facts, the trial court exercised its discretion and enjoined Mr. Stambaugh, a party before it, from prosecuting a divorce in another state. Despite timely notice of the hearing on this injunction, Mr. Stambaugh chose not to appear personally to contest it.[3] After the injunction was issued and became final, he never sought to have it amended or vacated. He took no appeal from the trial court's decree.

Instead, Mr. Stambaugh ignored the injunction. He disobeyed it by prosecuting his divorce in Florida.

---

[3] The record reveals that on March 5, 1969, the day the wife filed her petition for a restraining order, her counsel mailed a copy of the petition to the office of Mr. Cramp, Mr. Stambaugh's counsel of record. Mr. Surrick, Mr. Cramp's associate, admitted receiving the copy of the petition, and said he then notified Mrs. Stambaugh's counsel that Mr. Cramp was out of town. Mrs. Stambaugh thereafter proceeded with her action and on March 14, 1969, the court entered the restraining order. At the time the decree was granted Mr. Surrick was present in court, representing the husband, and in fact succeeded in having the court modify the language of the proposed decree.

According to Rule 1027 of the Pennsylvania Rules of Civil Procedure:

"A party filing a pleading, *other than a complaint by which an action is commenced*, shall forthwith serve it on every other party

. . . .

"(2) by leaving a copy for or mailing a copy to him at the residence or place of business of the party *or the address of the party's attorney of record*, . . .". (Emphasis added.) See also Pa. R. Civ. P. 233. Because this petition for a restraining order was ancillary to the original complaint in divorce the requirement of the first part of the rule was met. See *Rothman v. Rothman*, 425 Pa. at 409, 228 A.2d at 901 (ROBERTS, J., concurring). Further, Mrs. Stambaugh complied completely with the second part of the Rule by mailing a copy of her petition to her husband's counsel's office. Mr. Stambaugh therefore was given all the notice required by the Rule.

Having obtained an exparte foreign divorce in violation of a proper injunction, only then did Mr. Stambaugh return to Pennsylvania and attempt to secure from the court, whose decree he defied, the benefits of his contumacious conduct. He challenges the award of permanent alimony to Mrs. Stambaugh on the ground that the Florida decree terminates all her rights to this support even though this was not, and could not have been, decided by Florida. And the majority upholds this challenge and approves his contumacious conduct. I cannot agree.

Because Mr. Stambaugh was a bona fide domiciliary of Florida, his ex parte divorce is entitled to full faith and credit on the issue of marital status. Usually in this Commonwealth a final decree of divorce terminates the duty of the husband to pay either support or alimony to his wife. E.g., *Commonwealth ex rel. McVay v. McVay*, 383 Pa. 70, 118 A.2d 144 (1955); *Commonwealth ex rel. Esenwien v. Esenwein*, 348 Pa. 455, 35 A.2d 335 (1944), aff'd sub. nom. *Esenwein v. Pennsylvania ex rel. Esenwein*, 325 U.S. 279, 65 S. Ct. 1118 (1945); *Commonwealth ex rel. Lorusso v. Lorusso*, 189 Pa. Superior Ct. 403, 150 A.2d 370 (1959).

But this is not the usual case. Whether a wife's potential right to permanent alimony can be terminated by an ex parte foreign divorce obtained by her husband in violation of a lawfully-issued anti-suit injunction is a unique question.

In my view, Mr. Stambaugh's contumacious conduct should estop him from asserting the existence of his ex parte Florida divorce on the issue of alimony. The situation is as if for the purposes of alimony the divorce did not exist.

By refusing to permit Mr. Stambaugh to profit by his contumacious conduct, Pennsylvania accommodates the competing interests of federalism and this Commonwealth's policies. The full faith and credit clause is

not violated because the Florida divorce is recognized as to marital status. *Estin v. Estin,* 334 U.S. 541, 68 S. Ct. 1213 (1948). The legislative provision that there is no alimony after a valid divorce from the bonds of matrimony is not offended, because Mr. Stambaugh's contumacious behavior makes non-existent, for purposes of alimony, the Florida ex parte divorce. The process and integrity of our judicial system is preserved by not allowing one who flouts valid and final orders of our courts from obtaining the benefits of his contumacious conduct. Mrs. Stambaugh's due process right to a hearing on the issue of her right to support is vindicated.

However, the majority in effect gives more than full faith and credit to the Florida ex parte divorce decree. Nothing in the full faith and credit clause requires Pennsylvania to allow Mr. Stambaugh's contumacious conduct to cut off his wife's right to support.

I dissent and would affirm in all respects the order of the Superior Court.