Monihan, Appellant, *v.* Monihan.

Argued November 11, 1969.   Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*Edward J. Morris,* for appellant.

*Lewis Kates,* with him *Leonard B. Edelstein,* for appellee.

Opinion by Mr. Justice O'Brien, April 22, 1970:

Appellant, Dr. Richard Monihan, commenced an action of divorce against his wife, Barbara, the appellee, in Philadelphia County.   After appellee had informed appellant of her intention to contest the divorce action which appellant had already commenced in Pennsylvania, appellant removed to the State of Nevada, and commenced another divorce action in that jurisdiction. At appellee's instance, the Court of Common Pleas of Philadelphia County granted an injunction restraining appellant from proceeding with the Nevada divorce ac-

tion.[1] Appellant calls upon this court to decide whether the injunction issued by the Court of Common Pleas of Philadelphia County was a proper exercise of that court's authority.

This Court has often held that lower courts may issue an anti-suit injunction against a spouse who is not a bona fide domiciliary of another state. See, e.g., *Wallace v. Wallace*, 371 Pa. 404, 89 A. 2d 769 (1952); *Smith v. Smith*, 364 Pa. 1, 70 A. 2d 630 (1950); *Janney v. Janney*, 350 Pa. 133, 38 A. 2d 235 (1944).

The purpose of such an injunction is to prevent the migratory spouse from gaining a sham divorce where he (or she, as the case may be) is not actually domiciled. Although the nonmigratory spouse is entitled to attack collaterally the asserted jurisdiction of the state rendering the divorce, she has legitimate grounds for fearing the effect of a foreign divorce. "The bases for plaintiff's fear are the 'full faith and credit' and 'prima facie weight' holdings of Williams v. State of North Carolina, supra [317 U.S. 287, 63 S. Ct. 207]. If the husband be allowed to prosecute his foreign suit to judgment, the wife, to save her rights as wife, will have to bring a new suit to set aside the foreign decree and in that suit will have to bear the heavy burden of striking down the prima facie effect of the foreign court's finding of residence." *Garvin v. Garvin*, 302 N.Y. 96, 96 N.E. 2d 721 (1951). A clearer case than the instant one for the issuance of an injunction to prevent a sham divorce can hardly be imagined. The facts are set forth in the opinion of the court below:

"The basic question of the domicile of the respondent, Richard Monihan, was resolved beyond any doubt.

---

[1] Two weeks after the hearing on the injunction the Nevada court issued a final decree of divorce. We are obviously not passing upon the validity of that divorce, nor do we intimate any view on this issue.

"Dr. Peter V. Moulder, the director of surgery at Pennsylvania Hospital, Philadelphia, testified that Richard Monihan was a physician who held a residency in surgery at the Pennsylvania Hospital, and was under his personal supervision since October 1, 1968; that he obtained a leave of absence four or five weeks before the date of the hearing and is still on the staff of the Pennsylvania Hospital. He testified that Dr. Monihan told him he would be coming back and that he was expected to return the week following the hearing.

"Dr. Herman Lipshutz testified that he is head of the section of plastic surgery at the Pennsylvania Hospital and that Dr. Monihan had applied for and had been accepted for a residency in plastic surgery under Dr. Lipshutz to commence July 1, 1969.

"Barbara C. Monihan testified on her own behalf. We found her to be a completely credible and very impressive witness. She testified that she was married to Dr. Monihan for nine years and has four children ranging in age from three to eight years. She and her husband have resided in Philadelphia all their lives, except during the period that he was in the service. Her husband left the family domicile in November, 1968, and started divorce proceedings shortly thereafter. He told her that, if she contested the divorce, he would go somewhere else and get a divorce. She produced a letter addressed to the Monihan family, received on March 28. In this letter, he expressed his deep love for the children and stated that, 'Since I won't be able to see you until the third week in April or so, please be extra good until then, O.K.'

"She also produced a letter from her husband dated February 27, 1969. In this letter he wrote, *inter alia,* 'Tell them I love them very much and being away from them is worse than I ever imagined it could be. . . . Dr. Moulder has given me a leave of absence for as long as

I want. . . . Dr. Lipshutz concurs and is fully informed about my activities. . . .'

"In the instant case, there was not even a sham or a pretext for going to Nevada except for the sole and avowed purpose of obtaining a divorce. The intent of the defendant to return as soon as his purpose was accomplished is clearly established. He never intended to make his permanent residence in Nevada. His own letters, as well as the other evidence in the case, make manifest his intent to return to Philadelphia to be near his children and to pursue the professional advantages of a residency under Dr. Lipshutz."

Thus, any number of precedents in Pennsylvania support the issuance of the instant injunction, where the migratory spouse did not have a bona fide domicile elsewhere.

Appellant contends that the injunction violates his right to travel. Such is not at all the case. The injunction does not purport to prevent appellant from traveling wherever he pleases. All that it does is restrain him from prosecuting a divorce action elsewhere. The propriety of the instant injunction is clearly established by the evidence which shows conclusively that petitioner's only purpose in attempting to establish a residence in Nevada was to obtain a divorce. That being the case, we have no reason to inquire into the propriety of the grant of an anti-suit injunction in those instances where the migratory spouse has established a bona fide domicile elsewhere.

Appellee urges us to hold appellant in contempt. The record indicates that the trial court withheld its decision on appellee's petition to cite appellant for contempt pending the outcome of the instant appeal testing the propriety of the injunction. We think it only proper that the court which issued the injunction be the court to determine whether appellant is in contempt. We

shall, therefore, remand this case to the trial court for its decision on appellee's motion to hold appellant in contempt.

The decree of the Court of Common Pleas of Philadelphia County is affirmed and the case is remanded to that court for further proceedings consistent herewith.

Costs to be borne by appellant.

Mr. Chief Justice BELL concurs in the result.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I fully agree with the majority that the injunction was properly issued in this case. But I cannot agree with the majority's theory that the propriety of granting the instant injunction turns on whether Dr. Monihan was seeking a "sham divorce."[1] I take a different view of the function of anti-suit injunctions, one that leads me to the conclusion that an anti-suit injunction may be proper even where the enjoined spouse is a bona fide domiciliary of another state.

I first note that it is constitutionally permissible for one state to enjoin a litigant from proceeding with litigation in another state, even where that other state has jurisdiction to proceed with the litigation. Anti-suit injunctions are hardly novel; as long ago as 1890 the United States Supreme Court upheld such injunctions against a claim that they violated the full faith and credit clause and the privileges and immunities clause. See *Cole v. Cunningham*, 133 U.S. 107, 10 S. Ct. 269 (1890). The holding in *Cole* retains its vitality

---

[1] While the majority states it is not passing on the validity of Dr. Monihan's divorce, the majority's decision that Dr. Monihan's residence was not bona fide, and his purpose was to "gain a sham divorce," is in fact a decision on the validity of the divorce. But I question the effect of the majority's decision on domicile now that Nevada has rendered a presumptively valid decree under *Williams v. North Carolina (II)*, 325 U.S. 226, 65 S. Ct. 1092 (1945).

today and later cases do not even bother to question the constitutional validity of such injunctions.[2] See, e.g., *Pope v. Atlantic Coast Line R. Co.*, 345 U.S. 379, 73 S. Ct. 749 (1952); *Miles v. Ill. Cent. R. Co.*, 315 U.S. 698, 62 S. Ct. 827 (1942); *Baltimore & O. R. Co. v. Kepner*, 314 U.S. 44, 62 S. Ct. 6 (1941).

Anti-suit injunctions are frequently resorted to in divorce litigation since the temptation to forum shop is great. The "liberality" of the several states' divorce laws varies greatly and no choice of law rules have developed whereby the forum state would take into account the fact that the marriage is "multi-jurisdictional." Each forum will apply its own divorce laws and so long as one of the parties is a bona fide domiciliary, the final decree of the rendering state will be binding in all other states. See *Williams v. North Carolina (I)*, 317 U.S. 287, 63 S. Ct. 207 (1942).

It must be recognized, however, that an injunction can only deter this forum shopping. It probably can neither preclude the rendering court from applying its own divorce laws,[3] nor soften the impact of the full

---

[2] Appellant's contention that the injunction violates his right to travel is clearly without merit. Appellant is perfectly free to go to Nevada; he is merely being restrained from prosecuting this divorce there. He cannot seriously contend that the injunction is intended, as were the welfare statutes declared unconstitutional in *Shapiro v. Thompson*, 394 U.S. 618, 89 S. Ct. 1322 (1969), to inhibit the freedom to "migrate, resettle, find a new job, [and] start a new life." *Shapiro*, 394 U.S. at 629, 89 S. Ct. at 1328. Of course, if his only reason to go to Nevada were to secure a divorce, the injunction would, in a sense, "hinder" the mission of his travel. But he surely is not arguing that he wished to go to Nevada solely for the purpose of obtaining a divorce, since this contention would cast grave doubts on the bona fides of his domicile there.

[3] "As an original question it would be arguable that the full faith and credit clause should compel the other state to accept the injunction as an adjudication of the impropriety of the forum for suit, but the authorities are all the other way." Leflar, American Conflicts Law 118-19 (1968) (footnote omitted).

faith and credit clause. If a litigant decides to risk contempt of court and violate the injunction, it is possible that he will be able to secure a valid, binding decree in the more hospitable state. And there is always the danger that an anti-suit injunction in one state may lead to a similar injunction in the other state. See *James v. Grand Trunk Railroad Co.*, 14 Ill. 2d 356, 152 N.E. 2d 858, cert. denied, 358 U.S. 915, 79 S. Ct. 288 (1958). Needless to say, this type of conflict is to be avoided if we want our multi-jurisdictional system to function smoothly.

Despite these drawbacks, anti-suit injunctions can be used to further important interests of the state which issues the injunction. In a sense, such injunctions help fill the need for adequate choice of law rules in divorce litigation. For when a court is called upon to issue an anti-suit injunction, it has a chance to weigh the interests of each jurisdiction, issuing the injunction if it feels its interests predominate. For example, if the issuing court's jurisdiction has been invoked first, the injunction is a way to insure a normal course of adjudication. See *Wenz v. Wenz*, 400 Pa. 397, 162 A. 2d 376 (1960). While sister states will normally defer to the court which first acquires jurisdiction, the principle of comity does not work very well in the divorce area. Also, anti-suit injunctions can prevent harassment of one of the parties;[4] in the divorce area, such harassment may take the form of going to an inconvenient forum to which the other spouse either cannot, or will not, go. Most importantly, an anti-suit injunction helps insure that the issuing court's law will be applied. In the

---

[4] See *Baltimore & O. R. Co. v. Kepner*, 314 U.S. 44, 55, 62 S. Ct. 6, 11 (1941) (FRANKFURTER, J., dissenting) (citing cases to support "the historic power of courts of equity to prevent a misuse of litigation by enjoining resort to vexatious and oppressive foreign suits") ; 3 Freedman, Law of Marriage and Divorce in Pennsylvania 1483 (1957) (citing authorities).

normal suit where more than one state may constitutionally exercise jurisdiction, courts are prone to weigh the respective interests of all the concerned jurisdictions, and an anti-suit injunction may not be very necessary. In a divorce action, however, each state will apply only its own divorce law; an anti-suit injunction proceeding gives the issuing court an opportunity to examine its contacts with the marriage relationship and to decide whether it is essential that its law apply.[5]

On balance, I believe that while anti-suit injunctions should not be issued lightly, they can do more good than harm, particularly in the divorce area. But when such injunctions are issued we should be careful to evaluate the extent of our interests in the litigation. We should consider whether our jurisdiction was invoked prior to another court's. We should also consider whether the litigation in the other court is unduly vexatious, although in the divorce area this may

---

[5] "Absent injunctive relief, . . . choice-of-law rules will decide whose law will govern. Contemporary thinking sees choice of law primarily as identifying underlying policies of conflicting laws and ascertaining the state with a dominant interest in applying its policies to the facts and parties before the court. Problems arise when . . . one of the states refuses to recognize the relative insignificance of its own interests. . . . In such situations the interested state may be tempted to determine the choice of law by enjoining the litigation and thereby forcing the case to be litigated in its own forum. . . .

"The need for injunctive relief in such situations should be somewhat reduced as rational choice-of-law rules achieve widespread acceptance. Yet . . . certain cases have traditionally been excluded from the operation of choice-of-law rules; in cases brought under . . . divorce laws, for example, the law of the forum is always applied. Disagreement and friction between states are likely to persist in these areas and the anti-suit injunction may continue to play an active role."

Developments in the Law: Injunctions, 78 Harv. L. Rev. 994, 1038-40 (1965) (footnotes omitted).

not be an important factor.[6] The key factor in the divorce area, however, should be whether our contacts with the marriage relationship so outweigh the other state's contacts as to make it vital that our divorce law should govern.

In past cases this Court has held that it was proper to issue an anti-suit injunction where neither spouse was a bona fide domiciliary of another state. See *Wallace v. Wallace,* 371 Pa. 404, 89 A. 2d 769 (1952) ; *Smith v. Smith,* 364 Pa. 1, 70 A. 2d 630 (1950) ; *Janney v. Janney,* 350 Pa. 133, 38 A. 2d 235 (1944) ; cf. *Rothman v. Rothman,* 425 Pa. 406, 228 A. 2d 899 (1967) (issue of domicile apparently not raised). Such a finding would, obviously, indicate that the other jurisdiction has no contacts with the marriage relationship, and therefore no concern with applying its own law. We have also stated, however, that we will refuse to issue an anti-suit injunction where one spouse is a bona fide domiciliary of another state, apparently basing our refusal on the United States Supreme Court's holding in *Williams v. North Carolina (I),* supra. See *Smith v. Smith,* 364 Pa. at 4, 70 A. 2d at 632. *Williams,* however, only set forth the rule that the state in which one spouse is a bona fide domiciliary has constitutional jurisdiction to enter a decree of divorce. But this does not mean that we are constitutionally barred from enjoining that spouse from proceeding in the other state. New York, for example, has issued anti-suit injunctions where the enjoined spouse may have had a bona fide

---

6 "Deprived of an injunction, the remaining spouse . . . could contest the litigation, which may be inconvenient and which, in practice, may be futile in view of the attitude of 'quickie' divorce states toward providing easy divorces. . . ."

Developments in the Law: Injunctions, 78 Harv. L. Rev. 994, 1040 (1965).

domicile in another state.[7] In fact anti-suit injunctions have often been employed in cases where some other forum can constitutionally exercise jurisdiction and issue a final decree binding under the full faith and credit clause.[8] See, e.g., *Pope, Miles, Kepner,* supra.

---

[7] See *Hammer v. Hammer*, 303 N.Y. 481, 104 N.E. 2d 864 (1952) ; *Garvin v. Garvin*, 302 N.Y. 96, 96 N.E. 2d 721 (1951). I note that the majority evidently places some reliance on *Garvin.* The holding in *Garvin* was later explained in *Rosenbaum v. Rosenbaum,* 309 N.Y. 371, 130 N.E. 2d 902, 903 (1955) : "[I]n the Hammer case, supra, the husband submitted 'numerous facts tending to show that he has transferred his domicile to that (sister) state' . . . and in the Garvin case, supra, . . . there was an opposing affidavit by the husband's attorney attempting to show that the Virgin Islands residence was not sham—factors lending added strength to the presumption of validity under the ' "full faith and credit" ' doctrine. . . . Each such divorce, therefore, has the semblance of being something other than a complete nullity. . . ." In both *Garvin* and *Hammer* the court held the anti-suit injunction proper. But adopting the approach that injunctions will issue only where there is a possibility that the divorce will be binding, New York will not issue such injunctions where one spouse is seeking a concededly invalid divorce in a foreign country. See *Rosenbaum v. Rosenbaum,* supra; but cf. *Arpels v. Arpels,* 8 N.Y. 2d 339, 170 N.E. 2d 670 (1960).

[8] In support of limiting anti-suit injunctions to only those cases where the foreign domicile was not bona fide, it has been argued that "[t]his result is not as bizarre as it seems; the enjoining state may be in a better position to judge the intent of the divorce plaintiff to remain permanently in the divorcing state. More importantly, because 'quickie' divorce states have little, if any, interest in determining whether the plaintiff is, in fact, domiciled there, the state of the marital domicile may alone have an interest in enforcing the requirement of domicile." Developments in the Law: Injunctions, 78 Harv. L. Rev. 994, 1041 (1965) (footnotes omitted).

On the other hand, there are factors which militate against our adjudicating, before the other state enters its decree, whether that other state constitutionally has jurisdiction. For one, we may make this adjudication too quickly; the spouse may not have had time to fully establish the manifestations of his "absence of any intention to live elsewhere." *Williamson v. Osenton,* 232 U.S. 619,

In my judgment the determination of whether an anti-suit injunction should be granted ought not turn on the issue of bona fide domicile elsewhere. Rather, it should turn on the factors articulated above, the most important being whether Pennsylvania contacts with the marriage relationship so outweigh the other state's contacts as to make it vital that our divorce law should govern.

Applying these principles to the instant case, it first appears that the divorce action was originally commenced in Pennsylvania, and thus an injunction can help us proceed with our normal course of adjudication. Further, the hearing court found that the Monihans have been married for nine years, have four children ranging in age from three to eight years, and have resided in Philadelphia all their lives, except during the period that Dr. Monihan was in the military service. The contact with Nevada, on the other hand, consists only of a short residence there by Dr. Monihan, such residence commencing *after* Mrs. Monihan informed her husband that she would contest the divorce he had already begun in Pennsylvania. Thus it is clear that Pennsylvania's interests in the marriage relationship— the length of residence in Pennsylvania and the domicile of the four young children in Pennsylvania—plus our interest in the orderly adjudication of a divorce action originally begun here, far outweigh Nevada's very slight interests in the relationship. Hence I agree with the majority that the injunction was properly issued in this case.

---

624, 34 S. Ct. 442 (1914) (HOLMES, J.). And even if we do find a lack of bona fide domicile, the other state might still render a decree entitled to "presumptive validity" under *Williams v. North Carolina (II)*, 325 U.S. 226, 65 S. Ct. 1092 (1945).