612

419 A.2d 1319

**J. C. S., Appellant,**

v.

**D. M. S. and D. D.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1979.

Filed May 16, 1980.

Neil J. Marcus, Monongahela, for appellant.

Chris F. Gillotti, Pittsburgh, for appellees.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

614

SPAETH, Judge:

This is a case involving the custody of two children. Generally stated, the issue is what effect, if any, the lower court should have given a North Carolina custody order.

Appellant father Joseph S. and appellee mother Donna S. are the parents of two children, Kathryn, born February 11, 1971, and Thomas, born November 21, 1974. The father and mother separated in May 1977. Custody of the children went to the mother, pursuant to a separation and custody agreement dated May 31, 1977, and she and the children went to live in Elizabeth City, Pasquotank County, North Carolina. On April 3, 1978, the father and mother were divorced by decree of the District Court of Guilford County, North Carolina. The agreement of May 31, 1977, was approved by the District Court and incorporated into the divorce decree.

On August 1, 1978, the father filed a motion in the District Court of Guilford County to change the separation and custody agreement so as to grant him custody of the children; the motion alleged that because of changed conditions, this would be in the children's best interest. On August 3 or 4, the District Court issued an order restraining the mother from removing the children from North Carolina until a custody hearing was held. The mother was served with this order in Pasquotank County. However, she was advised by counsel that the service was not effective, and on August 4, she left Pasquotank County and took her children to McKeesport, Allegheny County, Pennsylvania. While the mother and children remained in Pennsylvania, the District Court of Guilford County awarded the father custody of the children, and terminated his child support obligations.

On October 31, 1978, the father filed a petition in the Court of Common Pleas of Allegheny County, alleging that pursuant to the Uniform Child Custody Act, Act of June 30, 1977, P.L. 29, No. 20, § 1 *et seq.*, eff. July 1, 1977, 11 P.S. § 2301 *et seq.*, the court should enforce the order of the District Court of Guilford County. After a hearing on November 16, at which both father and mother were present

and represented by counsel, the court entered an order denying the petition. The father has appealed from that order.

The lower court concluded that the District Court of Guilford County lacked jurisdiction to rule on custody of the children, and that therefore its custody order was unenforceable. The court acknowledged that according to the Uniform Act, a Pennsylvania court is required to recognize and enforce the custody decree of the court of another state when a certified copy of the decree is filed with the Pennsylvania court, and when the court of the other state has assumed jurisdiction "under factual circumstances meeting the [Act's] jurisdictional standards." Section 14 of the Act, *supra*, 11 P.S. § 2314. However, the lower court found that the District Court of Guilford County had failed to meet those standards.

The Uniform Act's jurisdictional standards are stated in section 4 of the Act, *supra*, 11 P.S. § 2304, as follows:

### § 2304. Jurisdiction

(a) A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this State:

(i) is the home state of the child at the time of commencement of the proceeding; or

(ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State;

(2) it is in the best interest of the child that a court of this State assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this State; and

(ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present in this State, and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child; and

(ii) it is in the best interest of the child that this court assume jurisdiction; or

(5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child.

(b) Except under subsection (a)(3) and (4), physical presence in this State of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this State to make a child custody determination.

(c) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

It would seem at least arguable that the District Court of Guilford County had assumed jurisdiction "under factual circumstances meeting "these standards, for North Carolina was apparently the "home state" of the children, since they had been in North Carolina for more than a year when the father filed his motion asking that he be granted custody of them. However, the lower court reasoned that an additional standard had to be met before the District Court of Guilford County could have jurisdiction. The court found this addi-

tional standard in the Commonwealth Child Custody Jurisdiction Act, Act of April 28, 1978, P.L. 108, No. 47, § 1, *et seq.*, eff. in 60 days, 11 P.S. § 2401 *et seq.*, specifically, in section 4, 11 P.S. § 2404, which provides:

### § 2404. Jurisdiction

(a) A court which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this court is the home jurisdiction of the child at the time of commencement of the proceeding, or had been the child's home jurisdiction within six months before commencement of the proceeding and the child is absent from this jurisdiction because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this jurisdiction;

(2) it is in the best interest of the child that the court assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with the jurisdiction of the court, and there is available within the jurisdiction of the court substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present within the court's jurisdiction and the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4) it appears that no other court would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2) or (3), or another court has declined to exercise jurisdiction on the ground that the court before which the action is pending is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

(b) Except under paragraphs (3) and (4) of subsection (a), physical presence of the child within the jurisdiction of the court, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court to make a child custody determination.

(c) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

Section 3 of the Commonwealth Act, *supra*, 11 P.S. § 2403, defines "home jurisdiction" as follows:

"Home jurisdiction." The jurisdiction in which the child immediately preceding the time involved lived with his parents, a parent, a person acting as a parent or in an institution, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of the child from the physical custody of the parent, institution, or person acting as a parent shall not affect the six months or other period.

Applying this definition, the lower court reasoned that Pasquotank County, not Guilford County, was the children's "home jurisdiction," since the mother and children were living in Pasquotank County when the father filed his motion in Guilford County. Said the Court: " . . . Guilford County did not assume jurisdiction in accordance with the home jurisdiction test," and therefore, "this court was correct in refusing to honor the Guilford County ex parte custody award." (Slip op., p. 5)

–1–

■ We are not persuaded by the lower court's reasoning. One of the "general purposes" of the Commonwealth Act is "[to] avoid jurisdictional competition and conflict with the courts of the respective counties of the Commonwealth in matters of child custody . . . " 11 P.S. 2402(a). Consistent with this purpose, "[c]ourt" is defined as "[a]ny of the courts of common pleas of the Commonwealth of Pennsylvania before which a custody action is pending." 11 P.S. § 2403.

It is therefore evident that the Act's "home jurisdiction" standard was enacted with reference only to Pennsylvania courts, that is to say, only to enable the court of one county in Pennsylvania to decide whether it or the court of another county in Pennsylvania should assume jurisdiction of a child custody case. Nothing in the Act suggests that the legislature intended the "home jurisdiction" standard to have any relevance in deciding whether the court of another state had jurisdiction to enter a child custody order. Whether the court of another state had jurisdiction to enter a custody order is a question to be decided not by reference to the Commonwealth Act, but by reference to the law of that other state. Thus, in a recent Florida case, *Howard v. Howard*, 378 So.2d 1329 (Fla.App.1980 5th Dist.) it was held that the Florida court was not bound to enforce a custody order of a Kentucky court when it appeared that under Kentucky law the Kentucky court lacked jurisdiction to enter the order:

> It would be anomalous indeed for this court to now hold that while Kentucky would not itself uphold its own decree, Florida courts must apply the more liberal jurisdictional test provided in Florida's version of the Uniform Act and enforce the Kentucky decree. This is especially so in light of the fact that the wife was specifically advised by the attorney appointed by the Kentucky court that it would not be necessary for her to participate in the Kentucky proceedings because Kentucky lacked jurisdiction to award custody.
>
> at 1330 *

■ Accordingly, before deciding whether the District Court of Guilford County had jurisdiction, the lower court should have taken testimony, including factual testimony as

---

* A collateral attack on the jurisdiction of a foreign state is not unique to child custody cases. In divorce litigation, a spouse who stays home while the other obtains a divorce in a foreign state may later collaterally attack the asserted jurisdiction of the foreign state. *Stambaugh v. Stambaugh*, 458 Pa. 147, 329 A.2d 483 (1974); *Monihan v. Monihan*, 438 Pa. 380, 264 A.2d 653 (1970); *Watson v. Watson*, 243 Pa.Super. 23, 364 A.2d 431 (1976).

to the service on the mother, and expert testimony on the law of North Carolina. *See* 42 Pa.C.S. § 5327(b). Thereby the court could have determined, under North Carolina law, whether the District Court retained jurisdiction over the mother by virtue of having entered the divorce decree and having approved the separation and custody agreement, and if it did, whether service on the mother was proper. These determinations made, the court would have been able to decide the applicability of the Uniform Act. We shall therefore remand.

–2–

The mother has argued that it was a denial of due process for the District Court of Guilford County to hear the father's motion for a change in custody. Section 5 of the Uniform Act, *supra*, 11 P.S. § 2305, provides that "[b]efore making a decree under this act, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child. . . ." The mother alleges that the order of the District Court of Guilford County was served on her in Pasquotank County, and gave her only seven days notice of the custody hearing. She further alleges that she was served with this order on the same day she moved from North Carolina to Pennsylvania, by which time she had "surrendered the premises in which she and the said children had been residing, had no place of residence, shelter or domicile in the State of North Carolina then available to her, was without funds available to her to participate in the said action, which was scheduled for a hearing in the County some two hundred (200) miles from her previous place of residence and the place in which she had been served with the said Notice, and was therefore in all respects denied due process to contest the said action commenced by the Petitioner." (Respondents' Answer, p. 4)

The lower court did not reach the mother's due process argument because, as we have discussed, it decided as a

matter of statutory construction that the District County of Guilford lacked jurisdiction. We have already observed that the court erred in its construction of the law, and that it should have received testimony. When on remand the court has received testimony, it should be in a position to decide whether the mother was denied due process.

—3—

The lower court declined to take any testimony on the basis of its interpretation of Pa.R.C.P. 209, which provides:

> If, after the filing and service of the answer, the moving party does not within fifteen days:
>
> (a) Proceed by rule or by agreement of counsel to take depositions on disputed issues of fact; or
>
> (b) Order the cause for argument on petition and answer (in which all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of the rule);
>
> the respondent may take a rule as of course on the moving party to show cause why he should not proceed as above.

It will be observed that under Rule 209, in particular, subsection (b), before the averments of fact in the answer may be deemed admitted, the petitioner must have ordered the cause for argument. Here, this requirement was not satisfied.

The father filed his petition seeking enforcement of the North Carolina custody order on October 31, requesting an immediate hearing pursuant to Section 25 of the Uniform Act, *supra*, 11 P.S. § 2325, which provides:

> Upon the request of a party to a custody proceeding which raises a question of existence or exercise of jurisdiction under this act the case shall be given calendar priority and handled expeditiously.

At this point, the mother had not yet filed an answer to the father's petition. After she did file her answer on November 15, the lower court, on November 16, found Rule 209 to apply, and deemed all averments in the answer admitted.

This was error. The father's request for calendar priority could not be considered equivalent to ordering the cause for argument on the petition and answer; no answer had been filed, and there was no reason to suppose that the father by requesting calendar priority was indicating his willingness to admit in advance the truth of whatever facts the mother should plead when she did file an answer. Furthermore, after the mother had filed an answer, the father did not order the cause for argument on petition and answer, nor did the mother take a rule to show cause why he should not so proceed.

In *Instapak Corporation v. S. Weisbrod Lamp & Shade,* 248 Pa.Super. 176, 374 A.2d 1376 (1977), in a similar situation, we held a lower court's application of Rule 209 erroneous because premature. There, the lower court had applied the rule in opening a default judgment. We stated:

[A]ppellee as the moving party did not proceed by rule or by agreement of counsel to take depositions; neither did appellee order the cause for argument on petition and answer; neither did appellant as respondent take a rule on appellee to show cause why it should not proceed to take depositions or order the cause for argument on petition and answer. Instead, with only the petition and answer, the lower court granted the petition. That decision was premature.

248 Pa.Super. at 181–182, 374 A.2d at 1379.

One further observation may be made with respect to the application of Rule 209. It has been recognized that in the application of equitable principles, a court may decline not to apply the rule. *Better Living, Inc. v. Filosa,* 199 Pa.Super. 110, 184 A.2d 314 (1962); 1 Goodrich–Amram 2d 209:1.1. In *Commonwealth ex rel. Cox v. Cox,* 255 Pa.Super. 508, 510, 388 A.2d 1082, 1083 (1978), we said:

We have stated repeatedly that two requirements must be met in child custody cases: the record must be complete; and the trial judge's opinion must give us the benefit of a thorough analysis of the record. *Gunter v. Gunter,* 240 Pa.Super. 382, 390, 361 A.2d 307, 311 (1976).

Thus in *Cox* we commented on the fact that there was almost no testimony as to the comparative financial situation of the parties, and no disinterested testimony as to their respective living environments. In several cases we have stated that if necessary, the court will develop the record itself. *Lewis v. Lewis*, 267 Pa.Super. 235, 406 A.2d 781 (1979); *Cox v. Cox, supra.*

By applying Rule 209, the court disables itself from deciding the case on a full record, instead accepting the record as defined by the pleadings. We do not say that Rule 209 should never be applied in child custody cases. Perhaps a case may be supposed in which the controlling issue would be so clearly an issue of law, and the relevant facts so clearly beyond dispute, that disposition on petition and answer would be appropriate. However, it would be a most unusual case.

The order of the lower court is reversed and the case remanded for further proceedings consistent with this opinion.