# Hall v. Hall

*James V. Moss*, for plaintiff.
*Stewart B. Barmen*, for defendant.

KAPLAN, *J.*, April 22, 1983—The parties hereto, Evelyn Hall (hereinafter wife) and Oran P. Hall (hereinafter husband) were married on July 26, 1946. In October of 1964, they purchased the property, title to which is the subject of the instant dispute. Since the time of its purchase, the property has been registered in the names of the parties as tenants by the entireties. The property was in fact used as the marital home from the time of its purchase until the parties' separation.

In June of 1978, having established his residence in Columbiana County, Ohio, husband filed an action in divorce against his wife (at no. 78-CIV-823, Court of Common Pleas, Columbiana County, Ohio). A decree in divorce was issued by that court on March 1, 1979, based upon the parties' two-year separation.

In its decree, the Ohio court made disposition of issues relating to custody and visitation for the parties' minor child Darlene, support for Darlene, periodic alimony, and distribution of household

goods, furnishings and motor vehicles accumulated by the parties during pendency of their marriage.

The subject of this dispute is one element of that Divorce Decree:

"It is further ORDERED and DECREED that the defendant be awarded as alimony the parties' former residence at 155 Del Rio Drive, Pittsburgh, Pennsylvania, free and clear of any right of the plaintiff therein and the defendant shall assume the indebtedness thereon due the Dollar Savings Bank of Pittsburgh, Pennsylvania."

Husband took an appeal from that decree to the Court of Appeals of Ohio which subsequently affirmed the lower court's judgment. Notwithstanding her repeated demand that he comply with that order, and her having assumed their obligation to Dollar Savings, husband not only refused to do so but eventually filed the action for partition pursuant to the Post-Divorce Partition Act (68 P.S. §501, et seq.), which is a consolidated element of the suit now before us.

Because husband has returned to Pennsylvania, he is on longer subject to process emanating from Ohio which endeavors to force his compliance. However, with the passage of Pennsylvania's new Divorce Code, wife commenced her action to register and adopt the Ohio Divorce Decree and its "alimony provision" ". . . as a duly issued and authenticated decree of a sister-state . . ." pursuant to Section 506 of the code, (the other element of the consolidation now before this court).

This matter is now before the court en banc for determination of cross motions for summary judgment filed by the two parties; wife seeking that title be quieted in her favor; husband seeking statutory partition.

Obviously, the threshold issue for determination is whether this court must enforce the Ohio Decree under the Full Faith and Credit clause of the United States Constitution (Article 4, Section 1). (See 28 U.S.C. §1738)

In the seminal case on this issue, Fall v. Eastin, U.S. 1 (1909), the Supreme Court decreed that a Washington State Court could not directly transfer title to land in Nebraska and expect to be upheld by Nebraska courts. The court did, however, distinguish a purported direct judicial transfer which presumed to affect title to real property in another jurisdiction, from the action of a court in equity with in personam jurisdiction over an affected party, which required that party to effect the transfer.

On the plain sense of the words used, the Ohio court herein did not effectuate a property transaction, but merely established an obligation and characterized its nature by use of the term of art: "alimony." To argue, as husband does, that the court intended by its decree to accomplish the title transfer which it directed, ignores that not only are there valid tax ramifications to utilization of that term, but that the same syntactical style is commonly used in requiring payment of periodic sums. Certainly, husband would not suggest that similar court orders establishing the obligation to pay periodic sums as alimony in and of themselves affect the title of money in possession of the obligor.

In support of his position, husband cites the case of Whitmer v. Whitmer, 243 Pa. Super. 462, 365 A.2d 1316 (1977). In that case, the Superior Court refused to effectuate the order of a Florida court which had awarded an unspecified and "undivided one-half interest in all assets . . ." which were owned by the respondent as lump-sum alimony to petitioner therein. The Superior Court took the posi-

tion that the in personam jurisdiction which the Florida court enjoyed over respondent "did not give it jurisdiction in rem over his property located outside the State of Florida."

Whitmer, however, is clearly distinguishable. The Whitmer court labored under a now defunct domestic relations scheme oblivious to "the realities of matrimonial experience" which have become the focus of the new divorce code.

The monumental shift in public policy represented by the passage of Pennsylvania's new Divorce Code, Act 1980-26, with its emphasis on building new lives rather than seeking retribution for old sins, militates for an economic parity previously adjudged contrary to Pennsylvania's public policy. Where at one time Pennsylvania courts refused to enforce validly alimony orders emanating from sister-states (Stambaugh v. Stambaugh, 453 Pa. 147, 329 A.2d 483 (1974); Watson v. Watson, 243 Pa. Super. 23, 364 A.2d 431 [1976], the explicit direction of the new code and the implications of its governing credo (Section 102) require that the principles stated in Whitmer be much more narrowly applied.[1]

---

1. The lone appellate statement on this subject in Pennsylvania since adoption of the Divorce Code was in the case of Taddei v. Taddei, 299 Pa. Super. 318, 445 A.2d 773 (1982). In that case, by way of dictum, the court applied the Whitmer presumption to conclude that a New Jersey court could not divide property located in Pennsylvania. The key distinction, however, is that defendant there had never submitted herself to the New Jersey court's jurisdiction so that it had neither in personam nor in rem jurisdiction for any purpose other than granting a divorce to plaintiff, its domicilary, given proper notice, etc. See Williams v. North Carolina, I 317 U.S. 287 (1942) and II 325 U.S. 226 (1945).

Section 506 provides;

"Whenever a person subject to valid decree of a sister-state or territory for the payment of alimony, temporary alimony or alimony pendente, lite, or his or her property is found within this Commonwealth, the obligee of such a decree may petition the court, where the obligor or his or her property is found to register, adopt as its own and to enforce the said decree as a duly issued and authenticated decree of a sister-state or territory. Upon registration and adoption, such relief and process for enforcement as is provided for at law in equity or by court rule in similar cases originally commenced in this Commonwealth shall be available and a copy of the decree and order shall be forwarded to the court of the state or territory which issued the original decree. The obligor in such actions to register, adopt and enforce, shall have such defenses and relief as are available to him in the state or territory which issued the original decree and may question the jurisdiction of that court if not otherwise barred. Interest may be awarded on unpaid installments and security may be required to insure future payments as in such cases originally commenced in this Commonwealth. Where property of the obligor, but not his person, is found within this Commonwealth, there shall be jurisdiction quasi in rem and upon registration and adoption of the decree of the sister state or territory, such relief and enforcement of the decree shall be available as in other proceedings which are quasi in rem."

Clearly, the new era in marital dissolution brought about in Pennsylvania with the advent of the new Divorce Code stems from a commitment to economic parity between divorcing spouses unfettered by inter-state boundaries. Husband, having chosen the forum, having submitted to its juris-

diction, having pursued his rights to its highest tribunals, cannot now be heard to question the validity of the decree which is the product of his efforts. To the extent that he submitted the matter for consideration, he should be estopped from exercising jurisdictional cavil over the results of an unfavorable (to him) disposition, Rosen v. Sitner, 274 Pa. Super. 445, 418 A.2d 490 (1980).

Restatement of the Law, Conflict (2nd) of Laws at Section 92 delineates the requisites of a valid judgment:

"A judgment is valid if:

(a) the state in which it is rendered has jurisdiction to act judicially in the case; and,

(b) a reasonable method of notification is employed and a reasonable opportunity to be heard is afforded the persons affected; and,

(c) the judgment is rendered by a competent court; and,

(d) there is compliance with such requirements of the state of rendition as are necessary for the valid exercise of power by the court."

The first comment to that restatement, expansively defines the term judgment to include orders, injunctions or decrees of equity courts.

Section 102 of the same restatement provides:

"A valid judgment that orders the doing of an act other than the payment of money or that enjoins the doing of an act may be enforced or be the subject of remedies in other states."

Under the aegis of that general statement, the comment includes "judgments" specifically ordering a defendant to convey land. From the perspective of Constitutional law, the principles enunciated in Whitmer, supra, have not changed. Whitmer itself provides that:

"having personal jurisdiction over appellee, the Florida court might have ordered appellee to convey a one-half interest in his Pennsylvania property to appellant and, if necessary, enforce its order by contempt proceedings. Presumably, it did not do so because appellee was not physically to be found within the State of Florida." Whitmer at 1319.

When Whitmer was decided, the award of alimony in gross (as "lump-sum alimony" is now termed) was an impermissable result under the public policy of Pennsylvania. Adoption of the new code has merely changed the legal perception of alimony, recognizing and establishing it as a legal duty properly imposed by a court of competent jurisdiction over the parties. Thus, it is now appropriate, as previously stated, to characterize an alimony award as a court order imposing a personal obligation to perform some function: either periodic monetary payments, or, as here, a one time property transfer.

The most persuasive judicial authority for this approach can be found in the New Jersey case of Higginbotham v. Higginbotham, 92 N.J. Super. 18, 222 A.2d 1120 (1966). Higginbotham was a case which, on its facts, was remarkably similar to Whitmer, supra. In a comprehensive opinion which extensively examines the issues and precedents from other jurisdictions, as well as the relevant Supreme Court cases, and which remains today the definitive work in this narrow area, the Higginbotham Court concluded that an action such as that herein may be maintained in the situs state on a sister-state's decree to convey land within its territory.

The Higginbotham analysis of Fall v. Eastin in fact parallels our own regarding Whitmer. As Higginbotham points out:

"The courts of Nebraska did not at the time of the Fall case have the power to award a husband's real estate as alimony in a divorce case, so that they were not compelled under the Full Faith and Credit clause to recognize an award or order, (i.e., Washington's) which the equity court in Nebraska could not themselves lawfully render." Higginbotham at 128 citing Weesner v. Weesner, 168 Neb. 346, 95 N.W.2d 682 (Sup. Court 1959).

In any event, it has been the policy of the courts within Pennsylvania to even honor decrees issued from a foreign country on a discretionary basis which would not fall within those cases subsumed by the Full Faith and Credit clause, as an outgrowth of the principles of comity. CF. Monihan v. Monihan, 438 Pa. 380, 264 A.2d 653 (1970), Sargent v. Sargent, 225 Pa. Super. 1, 307 A.2d 353 (1973). It cannot be construed as an abuse of discretion, given the clear direction in which Pennsylvania's Legislature has led us, to grant summary judgment in favor of wife and against husband so as to require the transfer property decreed by our sister court.[2]

## ORDER OF COURT

And now, this April 22, 1983, judgment is hereby granted in favor of the plaintiff-wife and defendant-husband is directed to execute a deed in her favor for the premises in question.

Defendant-husband's petition for partition is hereby dismissed.

2. Pursuant to the provisions of the Post-Divorce Partition Act (68 P.S. §501), it may very well be that by registration the foreign decree becomes a personal obligation upon the husband which would operate as a lien of record in such a post-divorce partition proceeding, thus subrogating his share of the division to his former wife.